**2007 BNH 036**
_____

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW HAMPSHIRE

In re:                                                                                          Bk. No. 07-10281-JMD
                                                                                                Chapter 13

Arnold J. Reis and
Eileen P. Reis,
        Debtors


*Richard Gaudreau, Esq.*
*Salem, NH*
*Attorney for Debtor*

*Lawrence P. Sumski, Esq.*
*Manchester, NH*
*Chapter 13 Trustee*


## MEMORANDUM OPINION

### I. INTRODUCTION

Arnold and Eileen Reis (the "Debtors") filed a petition for relief under chapter 13 of the Bankruptcy Code[1] on February 12, 2007 (the "Petition Date"). They subsequently filed their First Amended Chapter 13 Plan (the "Amended Plan") on June 14, 2007. On June 18, 2007 the Court held a confirmation hearing (the "Confirmation Hearing") during which Lawrence Sumski, the chapter 13 trustee (the "Trustee"), objected to confirmation of the Amended Plan because it did not adhere to the confirmation requirements of § 1325. The Trustee raised numerous issues regarding the Debtors' calculation of their projected disposable income under §

---

[1] In this opinion the terms "Bankruptcy Code," "section" and "§" refer to title 11 of the United States Code, 11 U.S.C. § 101 et seq., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8 ("BAPCPA").

1325(b)(1)(B) ("Projected Disposable Income") with emphasis on the Debtors' expenses.  After hearing argument from the parties, the Court took the matter under submission.

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.).  This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II.  DISCUSSION

The issues before the Court are almost entirely legal in nature.  They encompass the parties' interpretation and implementation of the statutory requirements of § 1325(b).  Consequently, the Court shall not begin with a recitation of the facts.  Rather, the facts will be discussed in the context of the analysis of the statutory text, the procedural history of the case and the arguments of the parties.

### A.  11 U.S.C. § 1325(b)

Section 1325 of the Bankruptcy Code delineates the legal predicate for confirmation of a chapter 13 plan of reorganization.  Section 1325(b) establishes what a bankruptcy court must find in order to confirm a chapter 13 plan over the objection of a chapter 13 trustee or the holder of an allowed unsecured claim.

After an objection, the bankruptcy court may not confirm a chapter 13 plan unless:

as of the effective date of the plan – the plan provides that all of the debtor's [P]rojected [D]isposable [I]ncome to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

2

11 U.S.C. § 1325(b)(1)(B) (emphasis added). "The term 'projected disposable income' is not new and has never, even in prior versions of the Bankruptcy Code, been defined." Kibbe v. Sumski (In re Kibbe), 361 B.R. 302, 307 (B.A.P. 1st Cir. 2007). However, though it left the term Projected Disposable Income undefined, BAPCPA did amend § 1325(b) by establishing a dichotomy in the determination of disposable income ("Disposable Income") for purposes of confirmation of a chapter 13 plan. Id. Section 1325(b)(2) defines Disposable Income as current monthly income received by the debtor ("CMI"), see § 101(10A), less amounts reasonably necessary to be expended for maintenance and support of the debtor and other identified expenses ("Reasonably Necessary Expenses").[2] See § 1325(b)(2). If the debtor's CMI is greater than the applicable median family income, § 1325(b)(3) requires that the debtor's Reasonably Necessary Expenses be determined in accordance with subparagraphs (A) and (B) of § 702(b)(2).[3] Section 707(b)(2)(A) provides a mechanical formula detailing what, as well as how much, a debtor may claim for expenses.[4] Finally, § 707(b)(2)(B) provides that a debtor may add additional expenses or make an adjustment to CMI if the debtor can demonstrate that certain special circumstances ("Special Circumstances") warrant such an adjustment.

---

[2] Section 1325(b)(2) limits CMI by excluding from consideration child support payments, foster care payments, and reasonably necessary disability payments for a dependent child (hereinafter, along with the income exclusions outlined in § 101(10A)(B) (Social Security Act benefits and payments to victims of war crimes, crimes against humanity and terrorism) the "Income Exclusions").

[3] Subsection 1325(b) provides two ways of calculating of Reasonably Necessary Expenses depending on whether a debtor is considered "above median" (§ 1325(b)(3)) or "below median" (§ 1325(b)(2)(A) & (B)). Debtors in this case are considered "above median," see discussion infra Part II.B.; therefore the analysis will address only § 1325(b)(3)'s requirements for above median debtors.

[4] In order to aid debtors in determining their Disposable Income, Official Form B22C ("Form B22C") has been developed. Part I of Form B22C ("Part I") addresses CMI. Part IV of Form B22C ("Part IV") lays out the mechanical formula detailed in § 707(b)(2)(A).

3

In a perfect world, an above median income debtor who follows the process established under § 1325(b) should come to a clear determination of their Projected Disposable Income. However, despite the lengthy statutory language and instructions for completing Form B22C, two glaring ambiguities continue to persist. First, as debtors work to determine their Disposable Income the new statutory concept of Special Circumstances under § 707(b)(2)(B) remains vague in numerous ways. Second, presuming Disposable Income can be accurately ascertained, at no point in § 1325(b) is there any indication of how the word "projected" in § 1325(b)(1) modifies the calculation of Disposable Income for purposes of plan confirmation. Accordingly, trustees, creditors and debtors are left without a clear guide to determine whether a proposed chapter 13 plan meets the requirements of § 1325(b)(1). The Court must address both ambiguities to resolve the Trustee's objections to the Amended Plan.

### B. Procedural History

On the Petition Date the Debtors filed all the required documents including all schedules, a Form B22C and a chapter 13 plan (the "Original Plan"). Using Form B22C the Debtors calculated their CMI to be $9,607.86. This amount is above the applicable median family income for a household of the Debtors' size.[5] Therefore, the Debtors are considered "above median." As is required of those considered above median, the Debtors completed the remainder of Form B22C. They subtracted from their CMI the total amount of all allowed expenses as calculated in Part IV which resulted in a monthly Disposable Income of $0.00. The Debtors then adopted the monthly Disposable Income figure of $0.00 as their Projected Disposable Income, resulting in the Original Plan which proposed paying nothing to unsecured creditors.

---

[5] According to figures compiled and distributed by the United States Census Bureau the applicable median family income for a family of four in New Hampshire is $84,155.00 per year, which equates to $7,012.92 per month ($84,155.00/12 months = $7,012.92).

4

On March 27, 2007 the Trustee conducted the § 341 meeting of creditors (the "§ 341 Meeting") at which the Debtors testified. After hearing the Debtors' testimony the Trustee filed a motion to dismiss (the "Motion To Dismiss") on April 9, 2007 citing reasons why the case should be dismissed for cause under § 1307. The Trustee's over-arching objection was that the Original Plan needed to provide that all of the Debtors' Projected Disposable Income would be applied to make payments to unsecured creditors, and that the monthly Disposable Income figure of $0.00 which the Debtors adopted as their Projected Disposable Income was not an accurate representation of Projected Disposable Income. The Trustee advanced two reasons why the Debtors' calculation of Projected Disposable Income was not proper under § 1325(b).

First, the Trustee argued that the Debtors errantly used their CMI in determining their Projected Disposable Income. Based on the testimony given by the Debtors at the § 341 Meeting, the Trustee asserted that the Debtors' income had changed significantly after the Petition Date rendering the CMI an inaccurate predictor of the Debtors' ability to fund a chapter 13 plan.[6] Therefore, the Trustee argues that under the ruling in In re Teixeira, 358 B.R. 484 (Bankr. D.N.H. 2006), the Debtors could not simply look to their CMI when that number was not representative of the Debtors' "anticipated income during the term of the plan." Id. at 486. Instead the Debtors were required to use the income figure from an up-to-date version of schedule I. Id. at 487 (when "there has been a substantial change in circumstances such that the numbers contained in Form B22C are not commensurate with a fair projection of the debtor's budget in the future . . . debtors will use [s]chedule I to determine income.").[7]

---

[6] CMI is calculated by averaging a debtor's income in the six months preceding the filing of a bankruptcy petition.

[7] In Teixeira the bankruptcy court held that the income figure from schedule I (the "Schedule I Income") should be calculated as a debtor's gross monthly income as reported on an up-to-date schedule I

Second, the Trustee argued that the Debtors' Reasonably Necessary Expenses as stated on Form B22C, which were determined under § 707(b)(2)(A) and (B), as required by § 1325(b)(3), are not representative of the Debtors' anticipated expenses during the term of the Original Plan. Specifically, the Trustee challenged the Debtors' deduction of two secured payments on real property which the Debtors owned on the Petition Date but have subsequently surrendered (the "Surrendered Secured Payments"). The Trustee argues that in the context of confirmation of a chapter 13 plan, in light of the reasoning in Teixeira, the Debtors should be required adjust their Reasonably Necessary Expenses when determining Projected Disposable Income to reflect the expenses that are actually anticipated during the term of the chapter 13 plan. The Trustee contends that the Debtors should not benefit by including in the computation of Projected Disposable Income expenses that they will never incur or be responsible for paying, even if those expenses are included in the determination of Disposable Income under § 707(b)(2)(A).

In response to the Trustee's Motion To Dismiss the Debtors filed an amended schedule I (the "Amended Schedule I") as well as the Amended Plan. The Debtors did not amend their Form B22C. Amended Schedule I takes into account the post-petition changes in income testified to by the Debtors at the § 341 Meeting and shows a combined gross monthly income of $12,310.95. This is the income figure the Debtors began with when calculating their Projected Disposable Income under the Amended Plan.[8]

---

exclusive of the Income Exclusions.

[8] By substituting their gross monthly income as calculated on Amended Schedule I for CMI when calculating Projected Disposable Income under the Amended Plan, the Debtors are in compliance with the holding in Teixeira. 358 B.R. at 486.

Although the Amended Plan proposes to pay some money to cover certain secured and administrative claims, the Debtors still propose to pay $0.00 to unsecured creditors in accordance with their recalculation of Projected Disposable Income which again resulted in no Disposable Income. In calculating their Projected Disposable Income the Debtors began with the income figure of $12,310.95[9] and from that subtracted their expenses in accordance with § 1325(b)(3). As a first step in totaling their expenses, the Debtors looked to the total expenses allowed on Form B22C, calculated to be $9,891.85.[10] The Debtors then included several additional expenses which they argue should be allowed under the Special Circumstances provision of § 707(b)(2)(B). The following comprise the Debtors' alleged Special Circumstances:

| | |
|---|---|
| $966.24 | Income and Social Security Taxes - Debtor Mr. Reis obtained new, post-petition employment. His increased income causes increased income and social security taxes. This figure represents the increase in taxes above the amount allowed on Form B22C. |
| $690.00 | Child Care Expenses - Debtors' post-petition employment requires increased travel away from home. This has caused an increased need for professional child care for the Debtors' one and three year old children. |
| $278.00 | Transportation Expenses - Debtors' post-petition employment requires significant automobile usage. This figure represents the difference between the Debtors' actual transportation costs and the amount allowed on Form B22C. |
| $742.73 | 401(k) Deductions - Debtors argue that the Bankruptcy Code and this Court's precedent indicate that 401(k) deductions should not be considered as income available to creditors. This figure represents |

---

[9] According to the Amended Schedule I none of the Debtors' income is derived from sources covered by the Income Exclusions. Therefore, the Debtors' gross monthly income is equivalent to their Schedule I Income.

[10] This figure includes deductions for the two secured payments to which the Trustee objected in his Motion To Dismiss.

7

|  |  |
|---|---|
|  | Debtors' desired, post-petition contribution amounts above the pre-petition amount reflected on Form B22C. |
| $208.77 | Health Insurance Expenses - Post-petition, the Debtors' health insurance costs have increased by this amount over the pre-petition amount reflected on Form B22C. |

The total amount of the Debtors' alleged Special Circumstances is $2,885.74. The Debtors added this Special Circumstances amount to the total allowed expenses calculated in Form B22C, resulting in total expenses of $12,777.59.[11] They subtracted this number from the Schedule I Income obtained from Amended Schedule I and determined that their Disposable Income was $0.00.[12] Finally, as they did in the Original Plan, the Debtors adopted the revised Disposable Income amount as their Projected Disposable Income.

At the Confirmation Hearing the Trustee renewed the objection raised in his Motion to Dismiss that the Debtors could not count the Surrendered Secured Payments as expenses when calculating their Projected Disposable Income. This objection is based on the Trustee's interpretation of how the term "Projected" modifies Disposable Income. He further objected to the Debtors' use of the Special Circumstances provision to augment their expenses beyond those determined through strict adherence to Form B22C. This objection goes to the calculation of Disposable Income, which is the basis for determining Projected Disposable Income. The Debtors contended that they followed the statutory requirements of § 1325(b), as interpreted by this Court, for determining Projected Disposable Income and that the Amended Plan should be confirmed and the Motion To Dismiss denied.

---

[11] $9,891.85 + $2,885.74 = $12,777.59

[12] $12,310.95 - $12,777.59 = (466.64). Realistically this number cannot be below $0.00 and it is therefore reflected as such.

### C. Analysis

The Trustee has raised objections to the Debtors' calculation of Disposable Income as well as to their determination of Projected Disposable Income as reasons for which the Debtors' Amended Plan should be denied confirmation. Therefore, the Court must determine whether the above median Debtors have satisfied the requirement in § 1325(b) that all of the their Projected Disposable Income is being applied to make payments to unsecured creditors. This determination requires the Court to follow a two-pronged analysis of the requirements of § 1325(b) after amendment by BAPCPA. The Court must first determine how above median debtors are to determine Disposable Income. The Court must then determine how Projected Disposable Income as used § 1325(b)(1)(B) differs, if at all, from Disposable Income determined under § 1325(b)(2) and (b)(3).

#### 1. Disposable Income

At first blush the determination of Disposable Income seems quite straightforward because it is defined in § 1325(b)(2). As stated above, Disposable Income equals CMI (but for certain exclusions) less Reasonably Necessary Expenses. 11 U.S.C. § 1325(b)(2). CMI is defined by § 101(10a) and the parties do not dispute its meaning. Nor do they dispute the exclusions noted in § 1325(b)(2) which refine the CMI figure. Where the parties' dispute arises is in the calculation of Reasonably Necessary Expenses. As noted earlier, the Debtors' annualized CMI indicates that they are above median and are therefore required to calculate their Reasonably Necessary Expenses in accordance with § 1325(b)(3), which states that the Debtors must look to "subparagraphs (A) and (B) of § 707(b)(2)" for guidance. See 11 U.S.C. § 1325(b)(3)(B).

### a. 11 U.S.C. § 707(b)(2)(A)

The determination of Disposable Income under § 707(b)(2)(A) is mechanical in nature and is computed by the Debtors through the completion of the means test, Form B22C. Part IV of Form B22C provides rigid guidelines detailing what expenses a debtor may deduct from CMI to determine monthly Disposable Income. Form B22C, and its instructions, purport to follow the requirements of § 707(b)(2). The only dispute between the parties with respect to this section comes from the Trustee's argument that the Debtors should not be allowed to deduct the Surrendered Secured Payments, that is the payments to secured creditors for debts which do not exist post-petition because the Debtors have surrendered the collateral. Unfortunately for the Trustee § 707(b)(2)(A)'s mechanical test does not allow for consideration post-petition events. In re Hartwick, 359 B.R. 16 (Bankr. D.N.H. 2007). As this Court recently determined in a detailed analysis of § 707(b)(2)(A) in Hartwick, "consideration of post-petition developments . . . would be contrary to Congressional intent as expressed in the amendments to § 707(b) by BAPCPA." Id. at 21. Although Hartwick involved chapter 7 debtors, and was therefore directed at determining whether the presumption of abuse had arisen, the holding and the analysis of the statutory text applies equally to debtors under chapter 13 because Congress has directed the bankruptcy courts to use the same methodology to compute the Disposable Income for above median debtors in both chapter 7 and chapter 13 proceedings. See 11 U.S.C. § 1325(b)(3). Therefore the Court finds that the Debtors correctly included the two secured payments on real property which the Debtors owned on the Petition Date but have subsequently surrendered as deductions on Form B22C for the purpose of determining Disposable Income.

**b. 11 U.S.C. § 707(b)(2)(B)**

Section 707(b)(2)(B), the Special Circumstances provision, takes the opposite approach from § 707(b)(2)(A). Rather than provide rigid guidelines which leave little to no room for interpretation, it is vague and instructs by example. 11 U.S.C. § 707(b)(2)(B). The Special Circumstances provision allows for the modification of both CMI and expenses provided that a special circumstance can be proven which necessitates the alteration. Id. In the chapter 7 context this provision comes into play once the presumption of abuse has been established, a concept which is unique to chapter 7 and has no meaning or application in a chapter 13 case.[13] Nonetheless, as the language in § 1325(b)(3) clearly directs debtors to § 707(b)(2)(B) it must be regarded as conclusive on Congressional intent that chapter 13 debtors have this subsection available to them despite the fact that no determination of abuse is made. Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 108 (1980). Therefore, the Special Circumstances provision in § 707(b)(2)(B) may be utilized in the same manner and to the same extent by chapter 13 debtors as it could be used by chapter 7 debtors were a presumption of abuse to arise. The question for the Court is how to implement Congressional intent to use a chapter 7 procedure in determining if a proposed chapter 13 plan is confirmable. Three questions appear to be central to the implementation of the provisions of § 707(b)(2)(B) in chapter 13 proceedings: (1) who may invoke the Special Circumstances exception; (2) must any

---

[13] Section 707(b)(2)'s primary function as a provision of chapter 7 is to provide a mechanical formula that details when a court must dismiss, or with a debtor's permission convert, a chapter 7 case to chapter 13. Hartwick, 359 B.R. at 21. The reason for § 707(b)(2)'s mechanical formula is to limit judicial discretion when determining whether the granting of relief would be an abuse of the provisions of chapter 7. 11 U.S.C. § 707(b)(2) ("the court . . . may dismiss a case filed by an individual debtor under this chapter . . . if it finds that the granting of relief would be an abuse of the provisions of this chapter."). However, this theme of determining abuse, which drives the analysis laid out in § 707(b)(2), is not present in § 1325(b)(3). Therefore the Court will only take that theme into consideration to the extent that it helps define how §§ 707(b)(2)(A) & (B) are to be implemented.

11

alleged Special Circumstances have existed prior to and on the Petition Date; and (3) what qualifies as a Special Circumstance? The Court shall address each question in turn.

### i. Who may invoke the Special Circumstances exception?

The Special Circumstances provision does not explicitly state who may invoke it. However, a reading of the text of the statute, in context, is instructive. First, § 707(b)(2)(B)(ii) sets out the requirements for a *debtor* to establish Special Circumstances. Second, § 707(b)(2)(B)(i) indicates that this provision is to be used to rebut the presumption of abuse and in a chapter 7 proceeding the only party interested in rebutting that presumption would be a debtor trying to avoid having the case dismissed or converted to chapter 13. Therefore, the Court concludes that Congress intended that the only party who may invoke the Special Circumstances provision is the debtor. In addition, a reading of § 707(b)(2)(B) in the context of other provisions of the Bankruptcy Code and the legislative history supports this conclusion. Hartwick, 359 B.R. at 21 (stating that Congress provided § 707(b)(2)(B), the Special Circumstances provision, for debtors and § 707(b)(3) for other parties as two mechanisms through which parties may ask a court to consider facts external to § 707(b)(2)(A)'s mechanical test); In re Delbecq, 368 B.R. 754, 757 (Bankr. S.D. Ind. 2007) (quoting S. REP. NO. 106-49, at 2 (1999) ("[t]he bankrupt can rebut this presumption by demonstrating special circumstances.")).

### ii. Must an alleged Special Circumstance have existed prior to and on the Petition Date?

The answer to the second question is also found in the language of the statute. "Where the plain meaning of a statute is clear, it is controlling unless the literal application of the language produces a result demonstrably at odds with the intentions of its drafters." Hartwick, 359 B.R. at 20 (citing U.S. v. Ron Pair Enters., Inc., 489 U.S. 235, 242 (1989)). The primary purpose of the Special Circumstances provision in a chapter 7 case is to allow a debtor to rebut

the presumption of abuse. See 11 U.S.C. § 707(b)(2)(B).  That presumption arises out of § 707(b)(2)(A)'s mechanical formula, which provides a snapshot of a debtor's finances as of the petition date.  See Hartwick, 359 B.R. at 21; see also In re Longo, 364 B.R. 161, 165 (Bankr. D. Conn. 2007); In re Harr, 360 B.R. 759, 764 (Bankr. D. Ohio 2007).  If the presumption of abuse arises as of the filing of the petition, then it logically follows that in order to rebut that presumption the special circumstances necessary for rebuttal must also exist prior to or on the petition date.  Several courts have considered alleged special circumstance which arose post-petition.  Those cases implicitly stated, without expressly so holding, that circumstances which arise post-petition may meet the standard and be considered Special Circumstances.  See In re Pampas, 369 B.R. 390 (Bankr. M.D. La. 2007) (considering a chapter 7 debtor's post-petition pregnancy and related medical costs under the Special Circumstance provision); In re Moore, 367 B.R. 721 (Bankr. D. Kan. 2007) (considering above median chapter 13 debtors' post-petition reduction in income under the Special Circumstances provision); In re Templeton, 365 B.R. 213 (Bankr. W.D. Okla. 2007) (considering a post-petition increase in a chapter 7 debtors's student loan payments under the Special Circumstances provision).

      This Court does not agree with the implicit holding in those cases that circumstances which have arisen post-petition may qualify as special circumstances under § 707(b)(2)(B) in either a chapter 7 or a chapter 13 case.  Any such holding would be contrary to the unambiguous language of § 707(b) after the BAPCPA amendments.  Therefore, the Court holds that, as a threshold matter, a circumstance must have existed prior to or on the petition date in order to be considered a possible Special Circumstance under § 707(b)(2)(B).  To hold otherwise would allow abuse to exist on the petition date so long as it was remedied prior to the granting of a

discharge and that would clearly go against Congress's intent to have abuse determined via § 707(b)(2)(A)'s snapshot taken as of the petition date.

The Debtors' calculation of Disposable Income in support of the Amended Plan includes five separate alleged Special Circumstances. A review of the information provided by the Debtors reveals that each of these circumstances arose post-petition. Therefore, the Court finds that none of said circumstances qualify for consideration as Special Circumstances which may be used in the computation of Reasonable Necessary Expenses and Disposable Income.[14]

### iii.  What qualifies as a Special Circumstance?

Having determined that the Debtors' alleged Special Circumstances do not qualify under § 707(b)(2)(B) because they were not present on the Petition Date, the Court need not determine whether any of the alleged expenses could have qualified as a Special Circumstance. The Court notes that Chief Judge Vaughn has recently issued an opinion on the determination of whether various expenses qualify as Special Circumstances for purposes of rebuttal by a chapter 7 debtor of a determination of substantial abuse. In re Turner, 2007 BNH 032, 9 ("the main foci in

---

[14] The Court further notes that had any of the Debtors' alleged Special Circumstances existed pre-petition the Debtors would still be required to satisfy their burden of proof on each of the following elements:

> Debtors "shall . . . itemize" each additional expense or income adjustment. This requires identifying not just the nature of the suggested adjustment but also identifying and specifying its amount or financial impact. Debtors must also show, given the statute's language, that there is "no reasonable alternative" to each added expense or suggested change in income. Each item must be "documented" and accompanied by a "detailed explanation" of the "special circumstances" that make the expense or income adjustment "necessary and reasonable." Debtors must attest under oath to the accuracy of the information they provide. Then, under clause (iv) of § 707(b)(2)(B), debtors must show the impact of their proposed income adjustments and/or additional expenses on the means test calculation.

In re Littman, No. 07-20034-TLM, 2007 WL 1957175, at *6 (Bankr. D. Idaho July 6, 2007); see 11 U.S.C. § 707(b)(2)(B). The information provided by the Debtors would not satisfy their burden of proof with respect to any of the alleged Special Circumstances.

assessing [S]pecial [C]ircumstances are the 'no reasonable alternative' clause and the requirements of section 707(b)(2)(B)(ii)–(iv). . . . However, the Court stresses that the [S]pecial [C]ircumstances provision is not a catch-all for any expense that does not fit into any other [Form B22C] expense category." ).

## 2. How Projected Disposable Income Differs From Disposable Income

The Court's determination of the effect of the word Projected begins with the logical premise that because Disposable Income has two components, CMI and Reasonably Necessary Expenses, the word Projected must modify both components in the same way. However, several courts have struggled to determine the actual effect of the word Projected, ultimately siding with one of two prevailing interpretations. Compare In re Brady, 361 B.R. 765 (Bankr. D.N.J. 2007), In re Alexander, 344 B.R. 742 (Bankr. E.D.N.C. 2006), and In re Barr, 341 B.R. 181 (Bankr. M.D.N.C. 2006) (all generally holding that Projected indicates that the debtor's monthly Disposable Income should be multiplied by the number of months in the plan commitment period), with Kibbe, 361 B.R. 302, In re Teixeira, 358 B.R. 484 (Bankr. D.N.H. 2006), In re Jass, 340 B.R. 411 (Bankr. D. Utah 2006), and In re Hardacre, 338 B.R. 718 (Bankr. D. Tex. 2006) (all generally holding that Projected modifies Disposable Income such that a court must make a reality-based determination of a debtor's expected Disposable Income during the term of the chapter 13 plan). In Teixeira, a case which involved the determination of an above median, chapter 13 debtor's CMI, the court aligned itself with the forward-looking camp, stating that "[t]o give effect to the word '[P]rojected,' '[P]rojected [D]isposable [I]ncome' must be based upon the debtor's anticipated income during the term of the plan. . . .'" Teixeira, 358 B.R. at 486. In Kibbe, the Bankruptcy Appellate Panel applied the same rationale to the CMI portion of the Disposable Income determination for a below median chapter 13 debtor. Kibbe, 361 B.R. at

15

314 ("the income component of 'projected disposable income' . . . is the anticipated *actual* income of the Debtor, . . . . during the plan commitment period.") (emphasis in the original). Because Projected must logically modify Reasonably Necessary Expenses in the same way in which it modifies CMI, the Court sees no reason to deviate from the rationale of Kibbe and Teixeira. The Court holds that Projected Disposable Income must also be based on the Debtors' anticipated CMI and Reasonably Necessary Expenses during the plan commitment period.

This holding does not obviate § 1325(b)(3)'s requirement that debtors determine their Reasonably Necessary Expenses in accordance with § 707(b)(2)(A) & (B). In re Meek, No. 06-20307-TLM, 2007 WL 1830817, at *8 (Bankr. D. Idaho June 27, 2007) ("the expense side of disposable income is also subject to evaluation in light of the debtor's post-petition plan proposals, even though that inquiry is circumscribed by the overlay of § 707(b)(2)"). Nor does it indicate that above median debtors are to look to an up-to-date version of schedule J to determine their Reasonably Necessary Expenses. For purposes of confirmation it is presumed that debtors have not experienced any substantial changes post-petition. Therefore, paralleling the reasoning of Teixeira, an above median debtor's Disposable Income, as calculated in accordance with § 1325(b)(2) & (3), is presumed to equal Projected Disposable Income for purposes of chapter 13 plan confirmation. See Teixeira, 358 B.R. at 486; Jass, 340 B.R. at 418-19.

However, this presumption may be rebutted through an objection by the chapter 13 trustee or another party in interest, and is equally subject to alteration by a debtor who believes that a calculation of Disposable Income does not represent an accurate portrait of actual Disposable Income over the plan commitment period. Should a party in interest seek to rebut the presumption regarding an above median debtor's Projected Disposable Income, any amendments

16

made to Reasonably Necessary Expenses shall be limited to those expenses permitted under § 707(b)(2)(A) & (B) and only those expenses.  Meek, 2007 WL 1830817, at *9 ("the parties may address, and the Court may consider, whether a given expense - *within* those expenses authorized by § 707(b)(2)(A) & (B) - should be allowed when considered in light of the debtor's post-petition circumstances and, importantly, the proposed chapter 13 plan.") (emphasis in original). Such amendments shall be proven by the party seeking the amendment by a preponderance of the evidence.  "This approach is merely the application of the [m]eans [t]est viewed through the lens of § 1325(b) and Congress's instruction that the courts should 'project' [D]isposable [I]ncome . . . ."  In re Edmunds, 350 B.R. 636, 644 (Bankr. D.S.C. 2006).

**IV.  CONCLUSION**

For the reasons set forth in this opinion, the Court shall enter a separate order sustaining the Trustee's objection to the confirmation of the Debtors' Amended Plan and denying confirmation of the Amended Plan.  This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

ENTERED at Manchester, New Hampshire.


Date:   September 18, 2007              /s/ J. Michael Deasy
                                        J. Michael Deasy
                                        Bankruptcy Judge